UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

WILLIAM R. LEONARD

and

CARMEN U. LEONARD,

                     Debtors.

_____/

STUART A. GOLD, Trustee,

                     Plaintiff,

vs.

MARQUETTE UNIVERSITY,

                     Defendant.

_____/

Case No. 08-68186

Chapter 7

Judge Thomas J. Tucker

Adv. Pro. No. 10-4608

**OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In this adversary proceeding, the Chapter 7 Trustee seeks to avoid and recover, as fraudulent transfers, four payments that the Debtors made to Defendant Marquette University ("Marquette"). The Debtors made these payments, totaling $21,527.00, to pay for their 18-year old son's tuition and certain other expenses to attend Marquette. The Trustee and Marquette have each filed motions for summary judgment. The motions involve a number of issues, including allegations of an oral express trust; alternative allegations of a constructive trust; and what is "reasonably equivalent value" for fraudulent transfer purposes.

For the reasons stated in this opinion, the Court will grant each party's motion in part and deny it in part.

**I. Facts**

Except as noted, the following facts are undisputed.  The Debtors in this case, William

Leonard and Carmen Leonard, filed their joint Chapter 7 bankruptcy petition on November 17,

2008.  The Chapter 7 Trustee, Stuart A. Gold, filed this adversary proceeding on February 17,

2010, and later filed an amended complaint on June 14, 2010.  In his First Amended Complaint,[1]

the Trustee alleges that the Debtors paid Marquette $21,527.00 for their son's tuition expenses

for the 2008-2009 academic year.  The Trustee alleges that the Debtors made the following

transfers, by means of checks drawn on their joint checking account:

| Date | Check No. | Amount |
|------|-----------|--------|
| 05-08-08 | 6959 | $   400.00 |
| 08-18-08 | 7012 | $11,084.00 |
| 10-30-08 | 7064 | $10,000.00 |
| 11-02-08 | 7061 | $    43.00 |
|  | Total | $21,527.00[2] |

At the time of these transfers, the Debtors' son, Benjamin J. Leonard, was 18 years old.  He

began attending Marquette in the Fall of 2008.

Marquette admits that the Debtors made these four payments, by means of Debtor

Carmen Leonard writing checks payable to Marquette in the amounts listed above.  In his

summary judgment motion, the Trustee continues to assert that the transfers were made on the

above dates.  But the evidence presented by both the Trustee and Marquette in support of their

motions shows that the dates of two of these transfers were different from the dates alleged by

---

[1] Docket # 19.

[2] *Id.* at 2 ¶ 8.

2

the Trustee. The evidence shows, beyond any genuine dispute, that the checks at issue were paid

by the Debtors' bank, and therefore the transfers were made, on the following dates:[3]

| Date | Check No. | | Amount |
|------|-----------|---|--------|
| 05-08-08 | 6959 | | $ 400.00 |
| 08-18-08 | 7012 | | $11,084.00 |
| **11-05-08** | 7064 | | $10,000.00 |
| **11-20-08** | 7061 | | $ 43.00 |
| | | Total | $21,527.00 [4] |

Thus the first three of these transfers were made within the seven months preceding the Debtors'

bankruptcy, but the last transfer was made three days *after* the Debtors filed bankruptcy on

November 17, 2008.

Marquette claims that the August 18, 2008 and November 5, 2008 transfers, ($11,084.00

and $10,000.00 respectively) were made with the proceeds of a student loan that the Debtors' son

Benjamin obtained in August 2008.[5] While there are certain disputes between the parties

regarding this subject, the following facts are undisputed. In July 2008, Benjamin Leonard

applied to JPMorgan Chase Bank, N.A. ("Chase") for a student loan, in the amount of

$35,000.00. In the application, which was a document entitled "Private Education Loan

Application/Promissory Note and Credit Agreement," Benjamin was designated as the "student

---

[3] *Cf. Barnhill v. Johnson*, 503 U.S. 393, 394-95 (1992)(holding that for purposes of avoiding a transfer as a preference under 11 U.S.C. § 547, "a transfer made by check should be deemed to occur . . . on the date the drawee bank honors it").

[4] These dates are established by the Debtors' bank statements and copies of the four checks at issue, filed by the Trustee (Docket # 31, Exs. 6J, 6E), and by the Affidavit of the Debtor Carmen Leonard filed by Marquette (Docket # 27, Ex. C at ¶¶ 10, 13, 15, 33, 34, 37-38).

[5] Because the $43.00 transfer made on November 20, 2008 was a post-petition transfer, it cannot be avoided as a fraudulent transfer under either § 548 or § 544(b) of the Bankruptcy Code. *See* discussion in part IV-B-4 of this opinion.

3

borrower." Benjamin's father, the Debtor William Leonard, was designated as "co-signer."[6]

Benjamin and William signed this document, in these stated capacities, on July 23, 2008. Chase

approved the student loan, and mailed a check to Benjamin and William, jointly, at their home in

Birmingham, Michigan. The $35,000.00 check was made payable to "Benjamin J. Leonard &

William R. Leonard."[7] Benjamin Leonard indorsed the check and gave it to his mother, Debtor

Carmen Leonard, for deposit into her bank account. There is no specific evidence in the record

at this point that the Debtor William Leonard, the co-payee on the student loan check, indorsed

the check, but the check was deposited into the joint checking account of the Debtors, William

and Carmen Leonard, at Comerica Bank on August 8, 2008.[8]

Marquette claims that when Benjamin Leonard indorsed the $35,000.00 student loan

check and gave it to his mother to deposit it into her bank account, Benjamin and his parents

understood that these funds were to be held in trust and used for education expenses for

Benjamin at Marquette and for Benjamin's sister, who was then in high school. The Trustee

disputes this.

---

[6] Docket # 27, Ex. A.

[7] Docket # 31, Ex. 6D.

[8] The exact date of this deposit is shown by the Debtors' checking account statement for the period July 19, 2008 to August 19, 2008, on the second page of that statement (Docket # 31, Ex. 6J). *See also* Docket # 27, Ex. B (Aff. of Benjamin Leonard) ¶ 10; Ex. C (Aff. of Carmen Leonard) ¶¶ 6-8; and Ex. D (Aff. of William Leonard) ¶¶ 9-11.

4

## II. Course of proceedings

### A. The Trustee's claims

In the single count of his First Amended Complaint, the Trustee seeks to avoid the four transfers as fraudulent transfers, and recover them from the transferee, Marquette. The Trustee's single count alleges four separate grounds for avoiding the transfers. First, the Trustee alleges that the transfers were made with "actual intent to hinder, delay or defraud" Debtors' creditors, and that the transfers are therefore avoidable under § 548(a)(1)(A) of the Bankruptcy Code and under Michigan's fraudulent transfer statutes, Mich. Comp. Laws §§ 566.34(1)(a) and 566.37.[9]

Second, the Trustee alleges that the transfers are avoidable under the following provisions of § 548(a)(1)(B):

> The Trustee may avoid any transfer. . . of an interest of the debtor in property,. . . that was made. . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

_____

[9] Section 548(a)(1)(A) states, in pertinent part, that:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made. . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . ., indebted; . . .

11 U.S.C. § 548(a)(1)(A). The Michigan statute is similar. It permits avoidance of transfers made within the preceding six years on several grounds, including a transfer made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Mich. Comp. Laws § 566.34(1)(a).

Such a transfer is avoidable under Mich. Comp. Laws § 566.37(1)(a). As a result, the Trustee seeks to avoid the transfers under 11 U.S.C. § 544(b)(1), which permits the trustee to avoid "any transfer of an interest of the debtor in property. . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

(B)(i) received less than a reasonably equivalent value in exchange for such transfer. . . ; and

(ii)(I) was insolvent on the date that such transfer was made. . . or became insolvent as a result of such transfer. . . ; and

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; . . .

11 U.S.C. § 548(a)(1)(B).

Third, the Trustee alleges that the transfers are avoidable under Mich. Comp. Laws § 566.35(1), which is virtually identical to Bankruptcy Code § 548(a)(1)(B)(i) and (ii)(I).[10]

Fourth and finally, the Trustee alleges that the transfers are avoidable under Mich. Comp. Laws § 566.34(1)(b).[11]

---

[10] Mich. Comp. Laws § 566.35(1) states:

A transfer made. . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made. . . if the debtor made the transfer. . . without receiving a reasonably equivalent value in exchange for the transfer. . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer. . . .

[11] Mich. Comp. Laws § 566.34(1)(b) is similar to Bankruptcy Code § 548(a)(1)(B)(i) and (ii)(II) and (III). It states:

A transfer made. . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made. . ., if the debtor made the transfer. . . in either of the following:
. . .

(b) Without receiving a reasonably equivalent value in exchange for the transfer. . . , and the debtor did either of the following:

(continued...)

6

### B. The cross-motions for summary judgment

The Trustee seeks partial summary judgment, avoiding the four transfers as fraudulent under the constructive fraudulent transfer grounds in Bankruptcy Code § 548(a)(1)(B) and Mich. Comp. Laws § 566.35(1). The Trustee argues that each transfer was a transfer of property of the Debtors, made while the Debtors were insolvent, for which the Debtors did not receive reasonably equivalent value in exchange.[12]

Marquette seeks summary judgment on all of the Trustee's fraudulent transfer theories, with respect to each of the transfers. Marquette does not dispute the Trustee's evidence and argument that the Debtors were insolvent when the transfers were made. Rather, Marquette argues that, at least with respect to the last three of the four transfers, there was no transfer of property of the Debtors. And Marquette seeks summary judgment on the Trustee's constructive fraudulent transfer claims on the additional ground that the Debtors received "reasonably equivalent value" for each of the transfers.

The Court held a hearing on the motions, and then permitted limited post-hearing briefing relating to issues of "reasonably equivalent value." The motions are now ready for decision.

### III. Jurisdiction

---

[11](...continued)

> (*i*) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

> (*ii*) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

[12] The Trustee does not seek summary judgment on his "actual intent" theory of fraudulent transfer, which require the Trustee to prove that the Debtors made the transfers "with actual intent to hinder, delay, or defraud" creditors. *See* 11 U.S.C. § 548(a)(1)(A); Mich. Comp. Laws § 566.34(1)(a).

7

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). The single count of the Trustee's complaint seeks to avoid fraudulent transfers under 11 U.S.C. § 548, and under the combination of 11 U.S.C. § 544(b)(1) and Michigan fraudulent transfer statutes. The complaint also seeks to recover the transfers, once avoided, under 11 U.S.C. § 550. All of the Trustee's claims are core proceedings. *See* 28 U.S.C. § 157(b)(2)(H); *Bliss Techs., Inc. v. HMI Indus., Inc.* (*In re Bliss Techs., Inc.*), 307 B.R. 598, 603-06 (Bankr. E.D. Mich. 2004).

## IV. Discussion

### A. Summary judgment standard

Fed.R.Civ.P. 56(a), applicable to bankruptcy adversary proceedings under Fed.R.Bankr.P. 7056, provides that a motion for summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] In *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995), the court elaborated:

> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the [trier of fact]. Essentially, a motion for summary judgment is a

---

[13] The quoted language is from the version of Rule 56 as amended effective December 1, 2010. Before the 2010 amendment, Rule 56(c)(2) stated that a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." This Court's decision on the motions now before it is unaffected by the 2010 amendment to Rule 56; it would be the same under either version of Rule 56.

8

means by which to challenge the opposing party to 'put up or shut up' on a critical issue.

If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact]. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. However, if the evidence is insufficient to reasonably support a . . . verdict in favor of the nonmoving party, the motion for summary judgment will be granted. Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff.
. . .
      Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson [v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)], *Celotex [Corp. v. Catrett,* 477 U.S. 317 (1986)] and *Matsushita [Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)], trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining whether the moving party has met its burden, a court must "believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir.1999)(relying on *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir.1992)).

9

**B. Marquette's motion for summary judgment**

**1. Marquette's argument that there was an oral express trust**

**a. The argument**

Marquette argues that none of the transfers, except possibly the first transfer of $400.00 on May 8, 2008, was a transfer of "an interest of the debtor[s] in property," one of the necessary elements of a fraudulent transfer under Bankruptcy Code § 548(a)(1)(B). Rather, Marquette argues, the transfers were made from student loan funds held by the Debtors in trust for their son Benjamin. There was no written trust agreement regarding these funds, but Marquette argues that an oral express trust existed, under which the Debtors held the proceeds of Benjamin Leonard's $35,000 student loan in their joint checking account in trust for Benjamin, to be used at Benjamin's direction and for the purposes of paying Benjamin's tuition and expenses to attend Marquette, as well as high school tuition and expenses of Benjamin's sister.

As noted above, the $35,000 student loan check was deposited into the Debtors' joint checking account on August 8, 2008, and the Debtors made two pre-petition check transfers from that account to Marquette for Benjamin's tuition, of $11,084.00 on August 18, 2008 and $10,000.00 on November 5, 2008.

The other two transfers alleged in the Trustee's First Amended Complaint are not subject to Marquette's express trust argument. The first transfer, of $400.00 on May 8, 2008, could not have come from Benjamin's student loan funds, because the loan funds were not received until August 8, 2008. Marquette does not otherwise argue that this transfer was not a transfer of Debtors' property. And as discussed elsewhere in this opinion, the fourth transfer, of $43.00 on

November 20, 2008, was a post-petition transfer, and for that reason is not subject to avoidance under the any of the Trustee's fraudulent transfer theories.

### b. Why Marquette's argument matters

The Sixth Circuit has held that when a debtor holds property in trust for another, and makes a pre-petition transfer of such property, the transfer is not subject to avoidance as a fraudulent transfer under Bankruptcy Code § 548. *See Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849-52 (6th Cir. 2002). The court held that because the debtor holds only legal title, and not equitable title, to such trust property, the transfer of such property is not a transfer of "an interest of the debtor in property" within the meaning of § 548. *Id.*; *see also Meoli v. Kendall Electric., Inc. (In re R.W. Leet Electric, Inc.)*, 372 B.R. 846, 852-53 (B.A.P. 6th Cir. 2007).

Unlike Bankruptcy Code § 548, the Michigan fraudulent transfer statutes relied upon by the Trustee do not explicitly require that a transfer be a transfer of the debtor's property in order to be avoidable. But the Michigan avoidance statutes are available to the Trustee through Bankruptcy Code § 544(b)(1), and § 544(b)(1) does require that there be a transfer of the debtor's property. It uses the same phrase that is used in § 548, in authorizing avoidance only of a "transfer **of an interest of the debtor in property** . . . that is voidable under applicable law . . .." 11 U.S.C. § 544(b)(1)(emphasis added).

Thus, whether avoidance is based on § 548 or on the combination of state law and § 544(b)(1), the Trustee cannot prevail if the transfer was only a transfer of trust property in which the Debtors held only legal title.

11

### c. Michigan law on oral express trusts

As the parties note, property interests generally are determined by reference to state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979); *accord French v. Frey (In re Bergman)*, 467 F.3d 536, 538 (6th Cir. 2006)(citing *Butner*)("Unless a federal interest is at issue, property rights are defined by state law.")

Under Michigan law, an express trust may be established orally, at least with respect to personal property. *Osius v. Dingell*, 134 N.W.2d 657, 660 (Mich. 1965) (citation omitted), cited by both parties, held that "a valid trust in personalty may be created by parol." But "[t]o establish a trust of personalty, [the] parol evidence must be clear and satisfactory and find some support in the surrounding circumstances and conduct of the parties." *Id.* (citation omitted). "It is a general principle of trust law that a trust is created only if the settlor manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." *Id.* (citations omitted); *see also Children of Chippewa, Ottawa and Potawatomy Tribes v. Regents of Univ. of Michigan*, 305 N.W.2d 522, 526 (Mich. Ct. App. 1981)(same); *see generally Scarney v. Clarke*, 275 N.W. 765, 767 (Mich. 1937)(citation and internal quotation marks omitted)("To constitute an express trust there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created.").

### d. The evidence

Marquette argues that the facts support a finding of an express oral trust. Marquette claims that the $35,000 in student loan proceeds were the *res* of the trust; that there was an "unambiguous trust relationship" in the form of a parent-child relationship; and that the Debtor

Carmen Leonard undertook a "specific, affirmative duty" to pay the educational expenses of Benjamin and his two sisters.[14]

Marquette's express trust claim is supported by the affidavits of Benjamin Leonard and both of the Debtors. Benjamin's affidavit states that he indorsed the student loan check and gave it to his mother, Debtor Carmen Leonard, "for deposit into her bank account and to be held in trust" for his and his sister's educational expenses.[15] Similarly, Debtor Carmen Leonard's affidavit states her understanding that the student loan proceeds were to be deposited into the Debtors' checking account "to be held in trust and used for tuition payments to both Marquette" and the sister's high school. Debtor William Leonard's affidavit states that "at all times" he understood that the loan proceeds "were being held in trust for the funding of Benjamin[']s and [his sister's] educations."[16]

In deciding Marquette's motion for summary judgment, however, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party," here the Trustee. *Ky. Dep't of Transp.*, 53 F.3d at 149-50. Applying this standard, the Court concludes that the Trustee has pointed out circumstantial evidence upon which a trier of fact "could reasonably find" that there was no oral express trust. *Id.*

First, the evidence indicates that even though Benjamin Leonard was 18 years old (and therefore an adult) at the time, the $35,000 student loan check was made payable jointly to both Benjamin Leonard "and" Debtor William Leonard. This is evidence that the Debtor William

---

[14] Docket # 27, Def.'s Br. at 8.

[15] Docket # 27, Benjamin Leonard Aff. ¶ 10.

[16] Docket # 27, Carmen Leonard Aff. ¶ 8; William Leonard Aff. ¶ 15.

13

Leonard, who was at least contingently liable as a "co-signer" on the loan,[17] had a one-half

ownership interest in the loan proceeds. *See Versai Mgmt. Corp. v. Citizens First Bank*, No. 08-

15129, 2010 WL 1417798, at *3 (E.D. Mich. April 5, 2010)(citation omitted)("A check is

considered the personal property of the designated payees."); Mich. Comp. Laws § 440.3110(4)

(check paid to two or more persons not in the alternative is payable to all, and can only be

negotiated by all payees); *see also Progressive Universal Ins. Co. of Ill. v. Taylor*, 874 N.E.2d

910, 915 (Ill. Ct. App. 2007)(citations omitted)(the "issuance of an instrument to joint payees

creates a presumption that each payee has an equal ownership interest in the

instrument")(applying Illinois law). If Benjamin only owned one half of the student loan funds,

he could not have acted as settlor and created an oral express trust in the other half of the funds.

Instead, the other half of the funds were property of the Debtor, William Leonard.

Second, the fact that the $35,000 student loan check was deposited into the joint account

of the Debtors, in which Benjamin Leonard had no ownership interest, creates a rebuttable

presumption under Michigan law that those deposited funds were the property of the Debtors, as

the owners of the account, and not Benjamin. To rebut such presumption, "an adverse claimant

must show a clear and perfect title" to such funds. *See Muskegon Lumber & Fuel Co. v.

Johnson*, 62 N.W.2d 619, 622-23 (Mich. 1954)(citation omitted); *see also Danielson v. Lazoski*,

531 N.W.2d 799, 801 (Mich. Ct. App. 1995)(rebuttable presumption that holders of joint bank

---

[17] William signed the loan documents as a "co-signer." For purposes here, this means that William had, at least, contingent liability for the student loan. *Cf. In re Lipa*, 433 B.R. 668, 670 (Bankr. E.D. Mich. 2010) ("Generally the classic example of a contingent debt is a guaranty because the guarantor has no liability unless and until the principal defaults.")(citation and quotation marks omitted). It is not necessary at this point for the Court to decide whether William was actually just a codebtor on the loan, with the same non-contingent liability that Benjamin had, as the Trustee contends.

14

account share equal ownership); *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 535 (6th Cir. 2003)(citing *Muskegon Lumber* for the proposition that funds deposited into the bank account of the debtor's mother were "presumptively hers").

Third, the assertion of an express trust is called into question, at least somewhat, by the fact that the student loan funds were deposited into Debtors' general checking account, and thereby commingled with the other funds in that account, which belonged only to the Debtors. Neither Benjamin nor the Debtors created a separate account to hold only the student loan funds. Nor did Carmen set up a joint account with Benjamin that would permit her to write checks on the account to pay Benjamin's educational expenses. Any of these steps might have indicated an intent to hold the loan funds in trust.

Fourth, there is evidence that after the student loan funds were deposited into Debtors' joint checking account, the Debtors used the loan funds for their own benefit, for purposes other than paying the education expenses of Benjamin and his sister. It is undisputed, for example, that on September 3, 2008, Debtor Carmen Leonard used $12,398.14 of the loan funds to pay the property taxes on the Debtors' home.[18]

This evidence tends to show that the student loan funds were *not* held in trust for the sole purpose of paying the educational expenses of Benjamin and his sister, as Marquette alleges. Marquette attempts to explain this evidence away by citing Debtor Carmen Leonard's explanation — that before she made this large property tax payment, she made an agreement with Benjamin that the funds would be replenished shortly with a federal income tax refund of approximately $18,800 that the Debtors were expecting. The affidavits of Carmen Leonard and

---

[18] Docket # 27, Aff. of Carmen Leonard ¶ 23.

Benjamin Leonard support these assertions. And Debtors in fact did receive such a tax refund, totaling $18,870.00, in two installments that were direct-deposited into their joint checking account on September 25 and 29, 2008.[19]

Viewing all of the evidence in the current record in a light most favorable to the Trustee, however, the Court concludes that there is a genuine dispute of material fact as to whether an oral express trust was created. There is evidence both in support of and refuting the existence of an oral express trust. The Court therefore must deny Marquette's summary judgment motion to the extent it is based on the existence of an oral express trust.[20]

### 2. Marquette's alternative argument, that if there was not an oral express trust, then a constructive trust existed

Marquette makes an alternative argument, that if there was not an oral express trust, then the $35,000.00 in student loan funds were impressed with a constructive trust, for the benefit of Benjamin Leonard and his sister, under Michigan law. Under this alternative theory, Marquette argues, the funds transferred were not the property of the Debtors.

The Court must reject this argument. The Sixth Circuit's decision in *XL/Datacomp, Inc. v. Wilson (In re Omegas Grp., Inc.)*, 16 F.3d 1443 (6th Cir. 1994) and its progeny preclude Marquette's constructive trust argument. In *Omegas Group*, the Sixth Circuit held that "[b]ecause a constructive trust, unlike an express trust, is a remedy, it does not exist until a

---

[19] *Id*. at ¶ 22, 23, 28-30; Docket # 27, Benjamin Leonard Aff., ¶¶ 22-23, 25-26.

[20] Because the Court finds that genuine issues of material fact exist regarding the existence of an express oral trust, it is not necessary, at this time, to discuss the Trustee's arguments regarding tracing. (The Trustee argues that Marquette has the burden, but has not met its burden, to trace the alleged trust funds under the "lowest intermediate balance rule." *See Meoli v. Kendall Electric, Inc.(In re R.E. Leet Electric, Inc.)*, 372 B.R. 846, 853-57 (B.A.P. 6th Cir. 2007)(holding that under Sixth Circuit precedent express trust funds must be traced; the burden to do so is on defendant; and tracing "involves application of the 'lowest intermediate balance rule'").)

16

plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's property or assets with a constructive trust." *Id.* at 1451. Under *Omegas Group*, only "'property **already impressed** with a constructive trust by a court in a separate proceeding prepetition' [is] to be excluded from a bankrupt's estate." *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 197 (6th Cir. 1996)(emphasis added)(quoting *Omegas Group*, 16 F.3d at 1451).

In this case, no prior judicial action imposed a pre-petition constructive trust on the student loan funds. Nor is this a case like the *McCafferty* case, in which the Sixth Circuit held that because of an Ohio state court divorce judgment awarding property to one of the spouses, a constructive trust arose by operation of Ohio law. *See McCafferty*, 96 F.3d at 197; *see also In re Combs*, 435 B.R. 467, 477-79 (Bankr. E.D. Mich. 2010)(constructive trust existed by operation of Michigan law in pension funds held by debtor for the benefit of former spouse, based on state court divorce judgment). Unlike *McCafferty*, in this case there was no "judicial action" of any kind regarding the student loan funds at issue, prior to Debtors' bankruptcy. *See McCafferty*, 96 F.3d at 199. Nor does Marquette cite any Michigan statute that creates a trust in this situation. *See Omegas Group*, 16 F.3d at 1451 (*Omegas* court was not "address[ing] property that a state by statute has declared to be held in trust for particular purposes.")

Because no pre-petition judicial action imposed a constructive trust on the student loan funds, the Court cannot now find or impose a constructive trust. The Court, therefore, must deny Marquette's summary judgment motion to the extent it is based on the argument that the student loan funds were subject to a constructive trust.

17

### 3. Marquette's argument that the Debtors received "reasonably equivalent value" for the transfers in any event

Marquette argues that even if the transfers were transfers of the Debtors' property, the Debtors received "reasonably equivalent value" for the transfers, because the transfers enabled their son to attend and receive a college education at Marquette. This argument, if successful, would negate an essential element of all of the Trustee's constructive fraudulent transfer theories under Bankruptcy Code § 548(a)(1)(B) and Michigan law.

The Trustee argues that the entire "value" received in exchange for the tuition paid by Debtors was received by a third party, Benjamin. Marquette acknowledges this direct benefit to Debtors' son, but argues that Debtors also received "value," and indeed, "reasonably equivalent value," for the tuition payments made to Marquette, in the form of intangible benefits: (1) "their son received an education" which "bestowed peace of mind" on the Debtors that Benjamin "will be afforded opportunities" in life that would not have come but for the education; and (2) Debtors "anticipate that they will not remain financially responsible" for Benjamin.[21]

The Bankruptcy Code does not define the phrase "reasonably equivalent value." But the Code defines "value," for purposes of § 548, as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but [it] does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).

Similarly, the Michigan fraudulent transfer statutes use, but do not define, the phrase "reasonably equivalent value." *See* Mich. Comp. Laws §§ 566.35(1), 566.34(1)(b), quoted in footnotes 10 and 11 of this opinion. And they define "value" in terms virtually identical to

---

[21] Docket # 37, Def.'s Br. at 5.

Bankruptcy Code § 548's definition. *See* Mich. Comp. Laws § 566.33(1).[22] Thus, "reasonably

equivalent value" under the Michigan statute means the same thing that it does under Bankruptcy

Code § 548. *See generally Steinberg v. Young*, No. 09-11836, 2010 WL 1286606, at *3-4 (E.D.

Mich. March 31, 2010) ("Michigan Courts have imported the analysis used in the Federal

Bankruptcy Code" in determining "reasonably equivalent value" under the Michigan Uniform

Fraudulent Transfer Act)(citing *Willecke v. Toth*, No. 07-14676, 2009 WL 3153081, at *4 (E.D.

Mich. September 30, 2009)).

The Sixth Circuit discussed the § 548 concepts of "value" and "reasonably equivalent

value" in *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed.App'x. 337, No. 05-5744,

2006 WL 2380887 (6th Cir. Aug. 17, 2006).[23] In *Lisle*, the court held that "[a] court considering

---

[22] That statute says, in pertinent part, that:

> Value is given for a transfer or an obligation if, in exchange for the
> transfer or obligation, property is transferred or an antecedent debt is
> secured or satisfied. Value does not include an unperformed promise
> made otherwise than in the ordinary course of the promisor's business to
> furnish support to the debtor or another person.

[23] *Lisle* is an unpublished Sixth Circuit case. The Sixth Circuit's rules now permit the citation of
unpublished decisions, without limitation. 6th Cir. R. 28(f). When *Lisle* was decided in 2006, however,
the Sixth Circuit's rules restricted the citation of its unpublished opinions. Sixth Circuit Rule 28(g) then
in effect stated, in pertinent part:

> Citation of unpublished decisions in briefs and oral arguments in this
> Court and in the district courts within this Circuit is disfavored, except
> for the purpose of establishing res judicata, estoppel, or the law of the
> case. If a party believes, nevertheless, that an unpublished disposition
> has precedential value in relation to a material issue in a case, and that
> there is no published opinion that would serve as well, such decision
> may be cited if that party serves a copy thereof on all other parties in the
> case and on this Court.

The Sixth Circuit amended this local rule, effective January 27, 2007. The amendment was made in
response to the adoption of Fed.R.App.P. 32.1, effective December 1, 2006, which precludes courts from
(continued...)

[the question of "reasonably equivalent value"] should first determine whether the debtor

received *any* value in the exchange. If so, the court should determine if the value received was

reasonably equivalent." 196 Fed.App'x. at 341 (emphasis in original)(citation omitted). The

court further held that "[v]alue can be in the form of either a direct economic benefit or an

indirect economic benefit." *Id.* at 342. The court discussed the situation in which the

debtor/transferor does not receive a direct benefit in exchange for the transfer, but rather receives

an "indirect" benefit, "through benefit to a third person." The court noted:

> "It is well settled that 'reasonably equivalent value can come from one
> other than the recipient of the payments, a rule which has become known
> as the indirect benefit rule.' " (citations omitted). The indirect benefit rule
> was first explained in *Rubin v. Manufacturers Hanover Trust Co.*:

>> [A] debtor may sometimes receive "fair"
>> consideration even though the consideration given
>> for his property or obligation goes initially to a third
>> person.... **[T]he transaction's benefit to the debtor
>> need not be direct; it may come indirectly
>> through benefit to a third person.... If the
>> consideration given to the third person has
>> ultimately landed in the debtor's hands, or if the
>> giving of the consideration to the third person
>> otherwise confers an economic benefit upon the
>> debtor, then the debtor's net worth has been
>> preserved, and [the statute] has been satisfied-
>> provided, of course, that the value of the benefit
>> received by the debtor approximates the value of
>> the property or obligation he has given up.**

> 661 F.2d 979, 991-92 (2d Cir.1981)(internal quotation marks and citations
> omitted).

---

[23](...continued)
prohibiting the citation of federal judicial opinions that are designated as unpublished and that are
"issued on or after January 1, 2007." But the current Sixth Circuit Rules do not limit the use even of
unpublished opinions issued before January 1, 2007. Rather, current Sixth Circuit Rule 28(f) broadly
states that "[c]itation of unpublished opinions is permitted."

*Id.* at 342 (bold emphasis added).

In this case the "value," in the form of a benefit that was given by Marquette in exchange for the Debtors' making tuition payments for their son, went directly to the Debtors' son Benjamin, who was able to attend and receive a college education at Marquette. The benefit from this to the Debtors, if any, was indirect, because any benefit to the Debtors was derived from the benefit to their son. This is not a case, for example, where the Debtors' tuition payments to Marquette satisfied some antecedent debt that *the Debtors* owed to Marquette. In that scenario, not present in this case, Debtors' tuition payments could be deemed "value" in the form of a direct economic benefit to the Debtors.

The *Lisle* case also involved an indirect benefit to the debtor/transferor. In *Lisle*, the bankruptcy debtor Wallace Wilkinson paid $1 million from his personal funds to John Wiley & Sons, Inc. ("Wiley"), a book publisher, for a shipment of books that Wiley sold to Wallace's Bookstore, Inc. ("WBI"). The debtor Wilkinson was the majority shareholder of WBI. At the time of Wilkinson's $1 million transfer to Wiley, Wilkinson owed $60 million to WBI. WBI credited Wilkinson with a $1 million reduction in Wilkinson's debt to WBI. 196 Fed.App'x at 337-38, 342. Thus, in exchange for Wilkinson's $1 million payment to Wiley, the following benefits flowed: (1) a *direct* economic benefit flowing from Wiley to WBI, in the form of a shipment of books that Wiley sold to WBI; and (2) an *indirect* economic benefit flowing from WBI to the debtor Wilkinson, in the form of a $1 million credit against Wilkinson's debt to WBI. The Sixth Circuit characterized the latter benefit as "indirect," because "the benefit Wilkinson received did not come from Wiley," the transferee of Wilkinson's $1 million transfer, but rather from WBI. *Id.* at 342.

21

In *Lisle*, the Sixth Circuit held that when the benefit to the debtor/transferor is indirect, the fraudulent transfer defendant has the burden of showing that the indirect benefit to the debtor/transferor is "concrete and quantifiable," and has the burden of quantifying the benefit. *Id.* (citing cases, with approval). This burden can be difficult to meet in the case of an intangible, indirect benefit; as the *Lisle* court noted:

> The burden of showing that the benefit is concrete and quantifiable can be challenging in a case where the alleged benefit is goodwill, corporate synergy, a business opportunity, the continuation of a business relationship, or some other intangible benefit.

*Id.* (citations omitted). In the *Lisle* case, the court found that the indirect benefit to the debtor Wilkinson — a $1 million reduction in Wilkinson's debt to WBI — was concrete and quantifiable. *Id.*

Finally, the *Lisle* court held that whether the benefit to a debtor from a transfer is direct or indirect, it must be an "economic" benefit to the debtor in order to be considered "value." *Id.* ("Value can be in the form of either a direct economic benefit or an indirect economic benefit.") As the *Lisle* court held: "The district court rightly stated that 'the focus should be on the overall effect on the debtor's net worth after the transfer.'" *Id.* at 343 (citations omitted).

Thus, under the Sixth Circuit's decision in *Lisle*, an indirect benefit to the debtor from a transfer is not considered "value," and therefore cannot be "reasonably equivalent value," unless it is (1) an "economic" benefit; (2) concrete; and (3) quantifiable.

Applying these requirements to this case, it is clear that the Debtors did not receive any "value" for their tuition payments to Marquette, and therefore did not receive "reasonably equivalent value." Marquette points to no economic benefit to the *Debtors*, other than to

speculate that a college education for Debtors' son may in the future enable him to be financially independent of his parents, and thereby relieve Debtors of any need to financially support their son. But Marquette does not argue, and cannot demonstrate, that Debtors had or would have any legal obligation to support their adult son, either at the time of the transfers, when Debtors' son was 18 years old, or at any time in the future. And even if Debtors had such a legal obligation, it is nothing but speculation to suggest that Debtors' payment of tuition for their son's first semester of college at Marquette will make a difference between the Debtors needing to assist their son financially in the future and not needing to do so.

And as noted above, Marquette does not claim that the Debtors had any legal duty under Michigan law to pay for their adult son's college education. So Debtors' payment of such college tuition did not discharge or satisfy any legal duty on Debtors' part.

Understandably, Debtors may have felt a moral obligation to help their son pay for college, which the tuition payments helped satisfy. And Marquette argues that paying Benjamin's first-semester tuition "bestowed peace of mind" on the Debtors that Benjamin "will be afforded opportunities" in life that would not have come but for the education he received at Marquette. While satisfying such a moral obligation and receiving such "peace of mind" may be very real benefits that are personally quite important to the Debtors, these intangible benefits are not "economic" benefits to the Debtors. Nor are they "concrete" and "quantifiable" benefits. Under *Lisle*, then, such benefits do not qualify as "value" under § 548. The Debtors having received such benefits did not increase their "net worth," nor did such benefits increase the Debtors' assets in any way that could be used to pay their creditors. Rather, Debtors transferred

23

to Marquette $21,084.00 (assuming that this was property of the Debtors, a disputed issue

discussed in part IV-B-1 of this opinion,) and they received no economic value in exchange.

Many cases hold, in similar situations, that there is not "reasonably equivalent value"

received by a debtor who makes payments to a family member, or who makes payments to a third

party for the benefit of a family member. For example, in *Dietz v. St. Edward's Catholic Church*

(*In re Bargfrede*), 117 F.3d 1078, 1079 (8th Cir. 1997), a husband used his assets to help pay his

wife's judgment debt to her church for embezzlement. The Eighth Circuit held that the

husband's claimed receipt of "benefits in the form of a release of a possible burden on the marital

relationship and the preservation of the family relationship" were "indirect, non-economic

benefits" to the husband that "do not constitute reasonably equivalent value." *Id*. at 1080

(citations omitted). The court cited with approval cases holding that "moral obligations," "love

and affection," and "spiritual fulfillment" are not reasonably equivalent value. *Id. See also*

*Walker v. Treadwell* (*In re Treadwell*), 699 F.2d 1050, 1051 (11th Cir. 1983)(holding that

debtor's receipt of "love and affection" from his two daughters in exchange for transfers of

money was not reasonably equivalent value; such love and affection "is of no benefit to the

creditors"); *Zubrod v. Kelsey* (*In re Kelsey*), 270 B.R. 776, 781 (B.A.P. 9th Cir. 2001)(debtor

transferred money to his wife, in exchange for her agreement "to forego employment outside the

home, to take care of the family, and to provide comfort, advice, and society as [debtor's] wife;"

court held that debtor did not receive reasonably equivalent value: "value is limited to economic

or monetary consideration, and . . . the care and comfort one receives from a marital relationship

does not qualify"); *Hanrahan v. Walterman* (*In re Walterman Implement, Inc.*), No. 07-09043,

2007 WL 2901151, at *3 (Bankr. N.D. Iowa Sept. 28, 2007)(debtor corporation's sole

shareholder caused the corporation to pay his daughter's college expenses, in exchange for daughter's "love, affection, and promise to work hard in school;" court distinguished reasonably equivalent value under § 548 from "legal consideration necessary to form a legally binding contract," and held that reasonably equivalent value requires "a financial benefit to the debtor and thus to the creditors," and "love and affection will rarely, if ever, constitute reasonably equivalent value because they are of no use to creditors"); *Henkel v. Green* (*In re Green*), 268 B.R. 628, 651 (Bankr. M.D. Fla. 2001)(debtors "understandably felt a moral or family obligation" to pay for their daughter's wedding or to make a sizeable wedding gift, but satisfying such a moral obligation is not reasonably equivalent value, nor is "love and affection").

Nor can Marquette demonstrate that any alleged benefit to Debtors "is concrete and quantifiable . . . ." *Lisle*, 196 Fed.App'x at 342; *see also Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003* (*In re Fruehauf Trailer Corp.*), 444 F.3d 203, 214 (3d Cir. 2006)("[W]here value of intangible benefit could equal or exceed the value surrendered. . . , precise calculations are essential to allow the court to determine equivalency properly."); *Dayton Title Agency, Inc. v. White Family Cos., Inc.* (*In re Dayton Title Agency, Inc.*), 292 B.R. 857, 875 (Bankr. S.D. Ohio 2003)("[T]he economic value of any indirect benefits must be fairly concrete and quantifiable to merit consideration by the court.") (citing *SPC Plastics Corp. v. Griffith (In re Structurelite Plastics Corp.)*, 224 B.R. 27, 31 (B.A.P. 6th Cir. 1998)).

While Marquette claims that Debtors received value in the form of the "substantial benefit conferred upon parents when their child is educated,"[24] Marquette did not attempt to quantify this value in any manner. When questioned during the hearing on the motions about how to value this claimed indirect benefit, Marquette's counsel replied only that it would be an "extremely difficult determination." Speculative and unquantifiable claims of psychological benefits cannot meet Marquette's burden. *See, e.g., SPC Plastics Corp.*, 224 B.R. at 31 (where no evidence provided as to the value of indirect benefits, claim that the opportunity to acquire additional loans and receive new management talent found to be "speculative value"); *Dayton Title*, 292 B.R. at 875 (no attempt made "to measure or quantify" claims of "goodwill and continuation of business relationships," instead fraudulent conveyance defendants "only speculate[d], without evidentiary support," that the value was reasonably equivalent).

For these reasons, the Court must reject Marquette's argument, and in fact must conclude that the Debtors did *not* receive reasonably equivalent value in exchange for any of the transfers at issue. This is so with respect to the Trustee's fraudulent transfer claims based on Bankruptcy Code § 548 as well as his claims based on Michigan's fraudulent transfer statutes.

### 4. Conclusion regarding Marquette's summary judgment motion

For the reasons discussed above, the Court must deny Marquette's summary judgment motion, with one exception. Marquette is entitled to summary judgment on all of the Trustee's fraudulent transfer claims with respect to the last of the four transfers alleged in the Trustee's complaint. As discussed in part I of this opinion, the evidence shows without dispute that this $43.00 transfer was made on November 20, 2008, *after* Debtors' bankruptcy petition was filed on

---

[24]  Docket # 37, Def.'s Br. at 3.

November 17, 2008. Because that was a post-petition transfer, it cannot be avoided as a fraudulent transfer under either § 548 or § 544(b)(1) of the Bankruptcy Code. And the Trustee's First Amended Complaint does not allege any other basis for avoiding this post-petition transfer.

Section 548 applies only to transfers made "on or within 2 years **before the date of filing of the petition**." 11 U.S.C. § 548(a)(1)(emphasis added). So it does not apply to post-petition transfers. *E.g., Hoffman v. Cheek* (*In re Meltzer*), 90 B.R. 21, 23 (D. Conn. 1988). The Trustee's claims based on Michigan's fraudulent transfer statutes are made through Bankruptcy Code § 544(b)(1), and the Trustee's avoidance power under that section are also limited to pre-petition transfers. *See Rieser v. Dinsmore & Shohl, LLP* (*In re Troutman Enters., Inc.*), No. 05-8051) 2007 WL 205640, at *9, 10 (B.A.P. 6th Cir. January 26, 2007).

For the reasons stated, the Court will grant summary judgment for Marquette on all of the Trustee's claims relating to the $43.00 transfer, but otherwise will deny Marquette's summary judgment motion.

## C. The Trustee's motion for partial summary judgment

The Trustee seeks partial summary judgment, avoiding all four of the transfers as fraudulent under the constructive fraudulent transfer grounds in Bankruptcy Code § 548(a)(1)(B) and Mich. Comp. Laws § 566.35(1). The Trustee argues that each transfer was a transfer of property of the Debtors, made while the Debtors were insolvent, for which the Debtors did not receive reasonably equivalent value in exchange.

The Trustee presented substantial evidence that the Debtors were insolvent when each of the transfers was made. Marquette does not dispute the Trustee's evidence, and does not dispute

the Debtors' insolvency. Based on this, the Court finds that the Debtors were insolvent when the transfers were made.

For the reasons discussed in part IV-B-3 of this opinion, the Court has found that the Debtors did not receive reasonably equivalent value for any of the transfers. This leaves the disputed issues of whether and to what extent the transfers were transfers of property of the Debtors. For the reasons discussed in part IV-B-1 of this opinion, the Court concludes that there is a genuine dispute of material fact on this element of the Trustee's constructive fraudulent transfer theories, with respect to the second and third transfers (*i.e.*, the transfers of $11,084.00 and $10,000.00 on August 18, 2008 and November 5, 2008, respectively.) The Trustee's motion for partial summary judgment therefore must be denied with respect to these transfers.

In contrast, the Trustee's motion must be granted with respect to the first transfer — *i.e.*, the transfer of $400.00 on May 8, 2008. There is no genuine dispute that this transfer was a transfer of the Debtors' property. As Marquette concedes, the May 8, 2008 transfer could not possibly have been a transfer of proceeds from the August 2008 student loan, so Marquette's oral express trust argument does not apply to this transfer. The Trustee has demonstrated, beyond any genuine dispute, all of the necessary elements for avoidance of the first transfer, under his constructive fraudulent transfer theories.

**V. Conclusion**

For the reasons stated in this opinion, the Court will enter an order (1) granting the Trustee's motion for partial summary judgment with respect to the first transfer (the $400.00 transfer on May 8, 2008), and otherwise denying the motion; and (2) granting Marquette's

motion for summary judgment with respect to the fourth transfer (the $43.00 post-petition

transfer on November 20, 2008), and otherwise denying the motion.

**Signed on April 8, 2011**                    <u>**/s/ Thomas J. Tucker**</u>
                                                **Thomas J. Tucker**
                                                **United States Bankruptcy Judge**